ELLIS *v.* FRAZIER.

Argued 24 December, 1900; decided 28 January, 1901.

[63 Pac. 642.]

CONSTITUTIONAL LAW — UNIFORM TAXATION — LICENSES.

1. A constitutional requirement of uniformity of taxation does not apply to occupation or license fees.

CONSTRUCTION OF BICYCLE TAX LAW.*

2. A statute requiring a yearly payment of $1.25 on every bicycle as a condition precedent to its use on the public roads, and setting aside a certain proportion of each payment to create a particular fund, is a statute providing for a tax, as distinguished from a license, since the sum required is manifestly much larger than is necessary for the cost of regulation, and the law is palpably designed to provide a revenue.

TAXATION OF BICYCLES — LOCAL LAW.

3. An act such as Laws 1899, p. 152, authorizing a tax on bicycles within certain counties only, is a local law within the meaning of a constitutional prohibition against passing "local or special laws."

LOCAL LAW FOR LAYING HIGHWAYS.

4. Whether the bicycle tax law of 1899 (Laws 1899, p. 152), provides for laying out highways, is discussed but not decided.

BICYCLES — UNIFORMITY AND EQUALITY OF TAXATION.

5. A law authorizing a tax of a stated sum on each bicycle, regardless of its value, provides for assessing that class of property without uniformity, and necessarily produces unequal taxation, in violation of the Constitution of Oregon, article IX, § 1.

*NOTE.—To the point that a bicycle path is not an additional servitude on abutting property, see *Ryan* v. *Preston*, 66 N. Y. Supp. 162 (32 Misc. Rep. 92), affirmed in 69 N. Y. Supp. 100 (59 App. Div. 97) ; and read, also, *State* v. *Bradford*, 78 Minn. 387 (47 L. R. A. 289, 81 N. W. 202), sustaining a statute punishing any one who may drive on a bicycle path.

As to the right of bicyclists on the public highways, see notes in 48 Am. St. Rep., at p. 377; 47 L. R. A., at pp. 291, 293; 49 L. R. A. 764; and 50 L. R. A. 127.

A case much like the present one, and involving the act from which the Oregon statute was copied, is *City of Chicago* v. *Collins*, 67 Am. St. Rep. 224, 49 L. R. A. 408.

In 47 L. R. A. 289 is a long note collecting and classifying the authorities to 1900 on the general subject of bicycles, and the rights and duties of bicycle riders.—REPORTER.

BICYCLES — DOUBLE TAXATION — CONSTITUTIONAL LAW.

6.  An act levying a tax on a specified class of property, such as bicy-
cles, is unconstitutional, as providing for double taxation, in violation of
the Oregon Constitution, article 1, § 32, since it must be presumed that
the property in question has already been assessed for general taxation
by the proper officer.

From Multnomah : ALFRED F. SEARS, JR., Judge.

This is an action by J. A. Ellis against William Frazier,
as sheriff and *ex officio* tax collector, to recover the posses-
sion of a bicycle, or the sum of $10 as its value, in case
possession thereof cannot be had, and the further sum of $5
damages for its alleged unlawful seizure and detention.   The
facts are that the defendant, as Sheriff of Multnomah
County, appointed one J. W. Johnson as bicycle tax col-
lector therein, who on June 22, 1900, by reason of the plain-
tiff's failure to pay a special tax of $1.25 levied upon all bicy-
cles used in said county, seized plaintiff's bicycle, and re-
fused to surrender it, except upon the payment of said tax,
and the further sum of $1 as a fine for having neglected to
pay the same.   The complaint is in the usual form, and also
alleges that the act of the legislative assembly under which
such seizure was made is violative of certain provisions of
the constitution, particularly enumerating them. A demurrer
to the complaint, on the ground that it did not state facts suf-
ficient to constitute a cause of action, having been over-
ruled, and the defendant declining to plead further, judg-
ment was given as demanded, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Geo.
E. Chamberlain,* District Attorney, and *Robert G. Morrow,*
with an oral argument by *Mr. Chamberlain.*

For respondent there was a brief over the names of *Fen-
ton & Muir* and *Rufus A. Leiter,* with an oral argument by
*Mr. Wm. D. Fenton* and *Mr. Leiter.*

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

The question presented for consideration is whether the act of the legislative assembly approved February 18, 1899 (Laws 1899, p. 152), imposing in certain counties a tax of $1.25 upon bicycles, contravenes the constitution of the state, thereby rendering any of the provisions of said statute void. It may be safely said that a court of last resort, in construing a statute, will place its decision upon other grounds if possible, rather than to annul the act of a co-ordinate department of the government; the rule being well settled in this sate that an act of the legislative assembly will not be declared void, in whole or in part, unless its incompatibility with the organic law is apparent and free from doubt, every reasonable intendment being invoked to uphold the validity of the statute: *King* v. *Portland,* 2 Or. 146; *Cline* v. *Greenwood,* 10 Or. 230; *Cresap* v. *Gray,* 10 Or. 345; *Crowley* v. *State,* 11 Or. 512 (6 Pac. 70) ; *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263, 13 L. R. A. 533) ; *Deane* v. *Will. Bridge Ry. Co.,* 22 Or. 167 (29 Pac. 440, 15 L. R. A. 614) ; *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028) ; *Umatilla Irrigation Co.* v. *Barnhart,* 22 Or. 389 (30 Pac. 37) ; *Simon* v. *Northup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171).

The opinion of Mr. Chief Justice Marshall, in *Marbury* v. *Madison,* 5 U. S. (1 Cranch), 137, has forever set at rest the principle that a written constitution enacted by the sovereign power is the supreme law of the land, and binding alike upon each department of the government, and, however delicate the task may be, the duty of declaring the supremacy of the organic law is imposed upon the judiciary whenever, in an appropriate manner, the repugnance of the statute is made a material issue by a party who has sustained, or will incur, injury by its enforcement. Keeping these rules of construction in view, we will examine the case made by

the complaint, in which it is alleged, *inter alia,* that the act of the legislative assembly, under which the plaintiff's bicycle was seized and detained, violates the constitution of the state, article IV, § 23, subd. 7.

The provision of the organic law, invoked to annul the act in question, is as follows: "The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say: * * * (7) For laying, opening, and working on highways, or for the election or appointment of supervisors." The act in question, the validity of which is challenged by the judgment complained of, provides, in effect (section 1), that the county court or board of county commissioners of each county shall, on or before the first day of March of each year, levy a special tax of $1.25 upon each bicycle within its or their jurisdiction, except such as are kept for sale, and have not been sold, loaned, traded, or in any manner previously disposed of. Section 2. Immediately after said levy the sheriff shall appoint a bicycle tax collector, who shall collect said tax, and issue tags, which shall be attached to the bicycles of the persons paying the taxes thereon. Section 5. The absence of such tag from any bicycle is deemed *prima facie* evidence that the tax has not been paid, and upon the discovery thereof the tax collector may seize and hold all such bicycles until said tax and the further sum of $1 as a fine have been paid. Section 8. For the collection of said tax there shall be allowed not to exceed 25 cents of each and every tax collected. Section 9. The money collected in pursuance of the levy of said tax shall be deposited in the county treasury, and known as "The Path Fund," which shall be used to construct, maintain, and repair, along the public highways, "and such other places as may be thought advisable by the county court or board of county commissioners within the county, such suitable paths for the use of bicycles and pedes-

38 OR.—30.

trians as may be determined upon by the county court or board of county commissioners." Section 13. "The provisions of this act shall not apply to the counties of Baker, Clatsop, Coos, Crook, Curry, Douglas, Gilliam, Grant, Harney, Josephine, Klamath, Lake, Lane, Lincoln, Linn, Malheur, Morrow, Polk, Sherman, Union, Umatilla, Wallowa, and Wheeler."

1.  As a preliminary matter, it is important to consider whether the burden thus imposed upon bicycle owners is a tax or a license; for, if the latter, it is not inhibited by the provisions of the organic act relied upon, the courts generally holding that the constitutional requirement as to uniformity of taxation has no reference to the taxation of occupations: *Ex parte City Council of Montgomery,* 64 Ala. 463; *Ex parte Mirande,* 73 Cal. 365 (14 Pac. 888) ; *Baker* v. *City of Cincinnati,* 11 Ohio St. 534.

2.  The legislative assembly has referred to the levy as a tax, but the descriptive designation is unimportant; for the object sought to be attained by the enactment must determine the character of the exaction: *Ex parte Gregory,* 20 Tex. App. 210 (54 Am. Rep. 516). "The distinction between a demand of money, under the police power, and one made under the power to tax," says Judge Cooley, "is not so much one of form as of substance. The proceedings may be the same in the two cases, though the purpose is essentially different. The one is made for regulation, and the other for revenue. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case, and referring it to the proper power" : Cooley, Tax'n, 396. It was held, in the case of *In re Wan Yin* (D. C.) 22 Fed. 701, that whenever it is manifest that the fee for a license to conduct an occupation is substantially in excess of the sum necessary to cover the cost of issuing the license and the incidental expenses attending the regulation of the business, the burden is a tax, and not a license. So,

too, in *City of St. Paul* v. *Traeger,* 25 Minn. 248 (33 Am.
Rep. 462), the common council of St. Paul having passed
an ordinance requiring a license fee of $25 from every ped-
dler of vegetables in the streets of the city, and no regula-
tion or restraint having been imposed upon the manner of
conducting the business, it was held that the exaction, being
so much in excess of the reasonable expense of issuing the
license, was a tax levied upon the business for revenue.   "It
is therefore conclusive," says Mr. Tiedeman, in his work on
State and Federal Control of Persons and Property (volume
1, p. 495), in commenting upon the distinction between a
tax and a license, "that the general requirement of a license,
for the pursuit of any business that is not dangerous to the
public, can only be justified as an exercise of the power of
taxation, or the requirement of a compensation for the en-
joyment of a privilege or franchise."   The production of a
revenue, however, is not conclusive evidence of an exercise
of the taxing power; for it has been held that the legislative
assembly may authorize municipal corporations to issue li-
censes which incidentally result in securing revenue: Cooley,
Const. Lim. (5 ed.), *201; *Ex parte Mirande,* 73 Cal. 365
(14 Pac. 888) ; *City of Leavenworth* v. *Booth,* 15 Kan. 472;
*Vansant* v. *Harlem Stage Co.,* 59 Md. 330; *Flanagan* v.
*Treasurer of Plainfield,* 44 N. J. Law, 118; *State* v. *Bean,*
91 N. C. 554.
    The use of a bicycle by its owner as a means of cheap and
speedy locomotion in attending to his business or promoting
his enjoyment by reasonable exercise, thereby contributing
to his health and prolonging his life, cannot well be classed
as an occupation; and if it were it is not necessarily dan-
gerous to the public, unless the absence of noise in its oper-
ation, and consequent liability to come in contact with pedes-
trians, make it so.   The act in question does not attempt, in
any manner, to regulate the speed of bicycles, or to require
a bell to be attached thereto to be rung when approaching
travelers, or to carry a lighted lantern at night to avoid col-

lisions, and hence it cannot be said that the statute was enacted for protection.

Whatever the rule may be in respect to the granting of licenses which incidentally result in producing a revenue, or the law in relation to the authority of a municipal corporation in the maintenance of its streets, it cannot reasonably be inferred that the burden imposed by the act in question was an exercise of the police power of the state; for the use of a bicycle does not necessarily tend to the destruction of the highways. We do not wish to be understood as intimating that the sum of one dollar more than the cost of executing the necessary receipts and supplying the requisite tags is an unreasonable exaction, but, inasmuch as that sum is set apart from each collection as a fund for the purpose of constructing and maintaining bicycle paths, it is evident, we think, from a consideration of the entire act, that it was primarily designed as a means of raising revenue, and the burden thus imposed must therefore be treated as a tax, and not a license.

3. Referring to the principal objection urged against the statute, it will be seen that the act applies only to the counties of Benton, Clackamas, Columbia, Jackson, Marion, Multnomah, Tillamook, Wasco, Washington, and Yamhill, and hence the first inquiry which is naturally evoked by the clause of the constitution to which attention has been called is whether the act under consideration is a local law. A local act is confined in its operation to the property and persons of a limited portion of the state: *People* v. *O'Brien*, 38 N. Y. 193. "A local act," says EARL, J., in *People* v. *Newburgh R. R. Co.*, 86 N. Y. 1, "is one operating only within a limited territory or specified locality." In *Maxwell* v. *Tillamook County*, 20 Or. 495 (26 Pac. 803), Mr. Justice LORD, in defining the term, says: "Statutes are sometimes distinguished as general or local, according to whether they are intended to operate throughout the entire jurisdic-

tion, or only within a single county or other division or place. A law which applies only to a limited part of the state, and the inhabitants of that part, is local." The provisions of the bicycle tax law are operative only in 10 of the 33 counties of the state, and, under the definition of the term as adopted by this and other courts of last resort, the act in question is undoubtedly a local law.

4. The next inquiry is whether the act provides for laying, opening, or working on highways. A way may be public, though suitable only for footmen and horses, or when not suitable for all carriages *(Rex* v. *County of Salop,* 13 East, 95; *Rex* v. *Lyon,* 16 E. C. L. 243; *Tyler* v. *Sturdy,* 108 Mass. 196; *Boston & A. Ry. Co.* v. *Boston,* 140 Mass. 87, 2 N. E. 943) ; and hence a bicycle path is a highway for bicyclists and pedestrians. It will be remembered that section 9 of the act in controversy not only authorizes the construction of bicycle paths along the public highways, but also in such other places as may be thought advisable by the county court or board of county commissioners. If the construction of a bicycle path along the public highway be deemed a reasonable use of an existing right *(Simon* v. *Northup,* 27 Or. 487, 40 Pac. 560, 30 L. R. A. 171), the location of these paths in such other places as may be thought advisable by the county court or board of county commissioners would seem to be the laying out of a highway by means of a local law, which is in that respect, at least, inhibited by the constitution: *Maxwell* v. *Tillamook County,* 20 Or. 495 (26 Pac. 803). But, however this may be, the question is not necessarily involved herein; for it does not appear that any portion of the fund arising from the bicycle tax was being expended in laying out paths in any other places than along the public highway.

5. It is alleged in the complaint that the act in question is violative of the constitution, article IX, § 1, which, so far as applicable herein, is as follows: "The legislative assembly

shall provide by law for uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal," etc. The value of the bicycle the possession of which is sought to be recovered in this action is alleged to be the sum of $10. The transcript does not show whether the value thus alleged is greater or less than ordinary prices charged for bicycles by dealers therein, but, as the use of these vehicles must tend to their destruction, we think it may be safely assumed that the price of a bicycle depends upon its age, pattern, condition, workmanship, and the material of which it is composed, and that its value, being dependent upon so many elements, must necessarily be variant. The act under consideration imposes a tax of $1.25 upon each bicycle in use, irrespective of its value, and it remains to be seen whether such a burden is equal and uniform. In *Bright* v. *McCullough,* 27 Ind. 223, under a clause of the Constitution of Indiana prescribing that the general assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, etc., it was held that a specific tax of one cent on each acre of taxable land in a certain township, levied in pursuance of an act of the general assembly, which pretended to authorize the assessment of a tax not to exceed 1¼ cents on each acre of taxable land for road purposes, was inhibited by the organic law of that state. In *Smith* v. *County Commissioners,* 117 Ala. 196 (23 South. 141), it was held that an act of the legislative assembly levying a tax of one dollar per annum upon each road wagon in Marshall County, for the benefit of the public roads, violated the constitutional provision of Alabama prescribing that all taxes shall be assessed in exact proportion to the value of such property. In *Board of Com'rs* v. *Dunn,* 21 Colo. 185 (40 Pac. 357), it was held

that an act of the legislative assembly of Colorado, providing that nonresidents grazing cattle in any county of that state should pay 50 cents per head therefor in lieu of taxes, was void, as being in conflict with the constitution of that state, which prescribed that all taxes should be uniform. In *Pittsburg, C. & St. L. Ry. Co.* v. *State,* 49 Ohio St. 189 (30 N. E. 435), it was held that an act of the legislature of Ohio, requiring every corporation or company operating any part of a railroad within the state to pay the commissioner of railroads and telegraphs a fee of one dollar per mile for each mile of track operated within the state, contravened the constitution of that state, which declared that laws should be passed taxing by a uniform rule all moneys, credits, investments, and also all real and personal property, according to its true value in money. The value of all bicycles not being the same, the tax of $1.25 levied upon each destroys the required uniformity in the assessment, and renders the rate of taxation unequal, so that the tax in this respect violates the constitutional provision above quoted.

6. It is also alleged in the complaint that the act in question contravenes the organic law, article I, § 32, which reads as follows: "No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly; and all taxation shall be equal and uniform." The statute makes it the duty of the assessor of each county to procure from the county clerk a blank assessment roll at the proper time, and to assess every person in the county in which he resides, on the first day of March of the year when the assessment shall be made, for real and personal property then owned by him within such county: Laws 1893, p. 6. Invoking the presumption that official duty has been regularly performed (Hill's Ann. Laws, § 776, subd. 15), plaintiff's bicycle was assessed for the year 1900, thereby rendering him personally liable for the state, county, school, and other taxes imposed thereon. In *Johnson* v. *Mayor of*

*Macon,* 62 Ga. 645, it was held that the City of Macon, having taxed the property of the people doing business therein, did not prohibit the imposition of a special tax upon the business of such persons, but that a tax on a wagon kept for private use, and not employed in the business of its owner, was not a tax on the business, but on the property, rendering such tax void on account of its duplicity. In *Livingston* v. *City of Paducah,* 80 Ky. 656, it was held that a specific tax imposed upon all vehicles used in conducting or in connection with the regular business of the person or persons so running such vehicles was a proper exercise of the power to license an occupation, but that the statute pretending to authorize the common council of the City of Paducah to impose a tax upon all vehicles kept for family use, and which property had been regularly assessed and was liable to *ad valorem* taxes, was a double taxation of that class of property, rendering the clause of the charter in that respect void. So, too, in *City of Chicago* v. *Collins,* 175 Ill. 445 (67 Am. St. Rep. 224, 49 L. R. A. 408, 51 N. E. 907), it was held that an ordinance passed in pursuance of a clause of the city charter authorizing the common council to regulate the use of the streets, whereby a license fee was imposed upon all bicycles irrespective of their value, and used for private purposes exclusively as a means of locomotion, and which had been regularly assessed, and the owners thereof made liable for taxes thereon, was double taxation, and therefore void. The exaction of $1.25 imposed upon all bicycles, in addition to the *ad valorem* tax levied thereon, subjects such property to a burden from which other classes are exempt, and in this respect the double tax contravenes the clause of the constitution last adverted to. From these considerations, it follows that the judgment is affirmed.          AFFIRMED.