[Filed April 14, 1891.]

## J. W. MAXWELL v. TILLAMOOK COUNTY.

WAGON ROADS—CONSTITUTIONAL LAW.—The act entitled "An act to appropriate ten thousand dollars to aid Tillamook county in the construction of a wagon road from the Nehalem river, in the north end of said county, to the Fuqua toll road, in the south end of the county, and to use one thousand dollars of said appropriation on a branch road from South prairie to Netarts bay, and to create a board of commissioners to construct said work," approved February 18, 1889, is in conflict with article 4, section 23, subdivision 7, of the constitution, which declares that "the legislative assembly shall not pass special or local laws in any of the following enumerated cases—that is to say, * * * for laying, opening and working on highways, and for the election or appointment of supervisors." The said act is not a general law, but a special and local law within the meaning of that clause of the constitution.

Yamhill county: R. P. BOISE, Judge.

Plaintiff appeals. Affirmed.

W. W. Thayer, for Appellant.

The legislature of a state has power to appropriate the revenues of a county or charge a debt upon a county. (*Sangamon Co.* v. *Springfield,* 63 Ill. 71; *Richland Co.* v. *Lawrence,* 12 Ill. 1; *People ex rel.* v. *Flagg,* 46 N. Y. 401; *David* v. *Portland Water Co.* 14 Or. 99; Dillon Mun. Corp. § 61.)

The act of the legislative assembly under which this case arose is not in conflict with the clause of the state constitution forbidding the enactment of special or local laws for laying, opening and working on highways, and for the selection and appointment of supervisors. (*Allen* v. *Hirsch,* 8 Or. 412; *People ex rel.* v. *Banks,* 67 N. Y. 568; *Crawford* v. *Linn Co.* 11 Or. 498; *State ex rel.* v. *Leon,* 9 Wis. 279.)

James McCain, and George G. Bingham, for Respondent.

We maintain that this act is special and local, and in so far as it affects Tillamook county or the expenditure of its funds that it is in contravention of subdivision 7, section 23, article 4, of the constitution of Oregon. (Suth. Stat. Const. §§ 127, 193, 198; *State* v. *Judges,* 21 Ohio St. 1; *State ex rel.* v. *Mitchell,* 31 Ohio St. 592; *State* v. *Herrmann,* 75 Mo. 340; *Beaty* v. *Knowles,* 4 Pet. 156.)

Conceding the constitutionality of the act in question, we still maintain that the action will not lie, but that the plaintiff's only remedy was to present his claim for such

services as he rendered to the county court of Tillamook county and take such reasonable sum as such court would allow. (*Cook* v. *Multnomah Co.* 8 Or. 170; *Pruden* v. *Grant County,* 12 Or. 308; *Union County* v. *Slocum,* 16 Or. 237; *Walker* v. *Wasco County,* 19 Pac. Rep. 81.)

LORD, J.—This is an action to recover from the defendant Tillamook county the sum of $895, for services alleged to have been rendered as superintendent of construction of a public wagon road from Nehalem to the Fuqua toll road, in said county, with a branch road from South prairie to Netarts bay. The complaint alleges in substance that by virtue of the provisions of an act entitled "An act to appropriate $10,000 to aid Tillamook county in the construction of a wagon road from the Nehalem river, in the north end of said county, to Fuqua toll road, in the south end of said county, and to use $1,000 of said appropriation on a branch road from South prairie to Netarts bay, and to create a board of commissioners to construct said work," the commissioners named in the act duly employed the plaintiff, on the 6th day of March, 1889, as superintendent to superintend the work on said road at an agreed compensation of five dollars per day; that under said employment and under the direction of said commissioners, the plaintiff rendered services as such superintendent upon and about the construction of said roads from the 26th day of March, 1889, to the 16th day of November, 1889, inclusive, to wit, 179 days; that the commissioners, upon the construction of such roads, duly reported to the county court of said Tillamook county concerning the construction thereof in manner and form as required by law, and that thereby the said county became indebted to the plaintiff in the sum aforesaid, etc.

An answer was filed denying the material allegations, and further alleged that the plaintiff had filed a verified claim for a less amount ($710) for such services; that the court had examined the same and adjudged the amount due thereon to be the sum of $300, and ordered a warrant to be drawn on the treasurer of the county for that amount, etc.

The plaintiff in his reply alleged that the claim presented was in the nature of a compromise and did not include all his services, but that he was willing to receive the reduced sum of $710, without controversy, in full, rather than incur the delay and expense of a lawsuit.

Upon the case being called for trial, the counsel for the defendant moved to dismiss it for the reasons: (1) That the complaint did not state facts sufficient to constitute a cause of action, and (2) that the court had not jurisdiction of the subject matter of the action. The trial court sustained the motion, and ordered that the action be dismissed, and that the defendant recover its costs; and from the judgment entered thereon this appeal was taken.

The main question to be determined is as to the validity of the act under which the services were rendered. The contention is that the act is special and local, and as such is in contravention of subdivision 7, section 23, article 4, of the constitution, which provides that "The legislative assembly shall not pass special or local laws in any of the following enumerated cases, — that is to say, * * * 7. For laying, opening and working on highways, and for the election or appointment of supervisors."

The act which is claimed to be in conflict with this provision of the constitution reads as follows: Section 1. There is hereby appropriated out of the general fund of the state of Oregon, not otherwise appropriated, the sum of ten thousand dollars for the purpose of constructing a wagon road from Nehalem river, in the north part of Tillamook county, to the Fuqua toll road, in the south part of the same county; provided, that one thousand dollars of said appropriation shall be expended on a road from South prairie to Netarts bay, commencing where the above-named road crosses South prairie. Sec. 2. That Fred Scherinzinger, A. L. Alderman, and E. W. Mills are hereby appointed commissioners and viewers to locate said road and cause the same to be surveyed by the county surveyor. When said road or roads are located and run through the

lands of any person or persons who may feel themselves aggrieved thereby, they shall have the same recourse at law as is now provided for county roads, but this latter provision shall not apply to any part of said road or roads that are now already located. When said road or roads are located and surveyed and a plat thereof recorded in the county clerk's office said road or roads shall not be changed or vacated except upon a petition to the county court, signed by a majority of the freeholders of the district where said change is desired. Sec. 3. The commissioners shall employ some suitable person to superintend the work on said road or roads. The salary of the said superintendent, together with the expenses of damages, viewing, locating, and surveying shall all be paid out of the county funds of Tillamook county. The said commissioners shall report to the county court of Till-amook county, Oregon, setting forth their action concerning the construction of said road, and a full and explicit statement of their acts in constructing said road. Said report shall be made upon the completion of said road or roads. Section 4 makes provisions for the payment of the ten thousand dollars on completion of the road. (Laws, 1889, 169.)

It will be admitted, if this act is a special or local law, that then it comes directly within the prohibition of the clause of the constitution cited, and never had any validity whatever, for the legislature had no power to enact it. But to determine whether an act of the legislature is special or local, it is necessary to ascertain the meaning to be given to the words special or local as used in the constitution. The restriction is that the legislature "shall not pass special or local laws" in the enumerated cases; that is, the inhibition is directed against both "special or local laws," and as laws may be special and not local, or they may be local and not special, it is necessary that each word receive its distinct and peculiar signification. It is not easy to define with precision the distinction between a general law and one that is special or local. In general language, a local statute may be said to be one that is operative only within a portion of a state,

and a special statute is one that is applicable to particular individuals or things. Statutes are sometimes distinguished as general or local, according to whether they are intended to operate throughout the entire jurisdiction, or only within a single county, or other division or place. A law which applies only to a limited part of the state and the inhabitants of that part, is local. At common law, statutes were classified as public or general, and private or special. ((1 Blackstone's Com. 86.) "A general or public act," says Blackstone, "is an universal rule that regards the whole community, and of this the courts of law are bound to take notice judicially and *ex officio* without the statutes being particularly pleaded. Special or private acts are rather exceptions than rules, being those which only operate upon particular persons and private concerns." Under this classification, the words "public or general" and "private or special" are used synonymously.) The classification of statutes as local is of later origin, for under the common law statutes restricted to particular localities were considered as private or special. But the distinction between public and private acts, as defined by Blackstone, is not quite the distinction recognized in this country, where the disposition has been, on the whole, to enlarge the limits of the class of public acts which in any way affect the community at large. (*Unity* v. *Burrage*, 103 U. S. 447; Suth. Stat. Const. § 193.)

Within this view, local acts may be public or private, and are treated as public when they concern the public generally, though restricted in their operation to a local community. The distinction is important, owing to the various restrictions in the constitutions of the several states, and the division made in some of them between public or general laws in printing the acts of their legislatures, and to be kept in mind in the examination of the authorities. Thus in Maryland the divisions of the laws as published are "Public General Laws" and "Public Local Laws." Under the constitution of that state, article 3, section 33, inhibits the passage of local or special laws in certain enumerated cases,

but the laying out of roads is not included among them; but the next sentence imposes an inhibition on the passage of special laws for any case for which provision has been made by an existing general law. In *State ex rel.* v. *County Coms.* 29 Md. 516, the case shows that an act was passed relating to roads of that county, and the contention was that the act was a special law within the meaning of section 33, article 3, *supra,* and because provision had been made by an existing general law for jurisdiction and control over county roads and bridges, it fell within the constitutional prohibition and was a nullity; but the court held that it was not a special law, but a public local law;—that to make a statute a public law of general obligation it is not necessary that it should be applicable to all parts of the state. All that is required is that it shall apply to all persons within the territorial limits described in the act. But the clause of our constitution under consideration inhibits the general assembly from passing any "local or special laws" for the laying out and establishing of roads, and any act obnoxious to the objection of being special or local would be a nullity; for it is obvious that the prohibition of the enactment of "local or special laws" in the enumerated cases—as the laying out of a highway—is equivalent to the command that general laws alone shall be enacted for that purpose; for the words local or special are clearly used in contradistinction from the word general, and there being no power in the legislature in such cases to enact local or special laws, there can be no other than general laws enacted. (*People* v. *Cooper,* 83 Ill. 585.) Hence, if the act in question is local or special,—obnoxious to either objection,—the legislature was without power to enact it, and the act is without any validity. A local act applies only to a limited part of the state; it touches but a portion of its territory, a part of its people, or a fraction of the property of its citizens. "Legislation, to be local," said MULLIN, J., "must apply to and operate exclusively upon a portion of the territory of the state and the people living therein. If it

applies to and operates on persons or property beyond. such locality, it is not local." And again, "the true criterion by which to determine whether an act is local or general is to inquire whether under it the people of the state may be affected;—if not, it is local; if they can be, it is general." (*Healey* v. *Dudley*, 5 Lans. 115.) "A local act," said EARL, J., "is one operating within a limited boundary or specified locality. An act operating upon persons or property in a single county, or in two or three counties, would be local." (*People* v. *Plank Road*, 86 N. Y. 7.)

A special statute is one that is only applicable to particular individuals or things. They are those made, says Mr. SUTHERLAND, "for individual cases, or for less than a class, requiring laws appropriate to its peculiar condition and circumstances; local laws are special as to place." (Suth. Stat. Const. § 127.) A special law is one such as at common law the courts would not notice, unless it was pleaded and proved like any other fact. (*Hingle* v. *State*, 24 Ind. 28; *Toledo, R. R. Co.* v. *Nordyke*, 27 Ind. 95.) At common law, private and special laws as applied to statutes were convertible terms. In *Allen* v. *Hirsch*, 8 Or. 412, the view was sustained that a special law under section 23, article 4, is a private law at common law. An act changing the venue of a particular trial for murder is special. (*People ex rel.* v. *Judge*, 17 Cal. 547.) An act to establish a court at a particular place was held to be a special law in *McGregor* v. *Baylies*, 19 Iowa, 43. One text writer defines a special law as distinguished from a general law in this wise: A general law "is one which provides for all things of a kind or genus; special provides for a species of the genus." (Smith on Const.) It is not easy to define with accuracy the distinction between general and special laws, but the instances given will serve to elucidate the idea. It is, however, manifest from the construction given to these words special or local, as applied to statutes, that the purpose of the prohibition against the general assembly passing local or special laws in the enumerated cases, including the laying out of highways, was to

secure a harmonious system of general laws upon these sub-
jects, and to avoid the mass of incongruous acts, each
applying to some limited portion of the state, or some par-
ticular individual or special case, as would inevitably result.
This would prevent any distinction in the operation of laws
between different localities, as well as between persons or
things in respect to these subjects.   It would require as to
these matters that they should be regulated by general laws
of uniform operation throughout the state.   Turning now
to the act in question, it is entitled an act to appropriate ten
thousand dollars to aid Tillamook county in the construction
of a wagon road wholly within its boundaries.   It appro-
priates the money for that purpose out of the general fund
of the state.   It appoints the commissioners and viewers to
locate the road, authorizes them to employ some suitable
person to superintend its construction, provides that the
expense of damages and locating the road shall be paid out
of the county funds, and makes provision for the payment
of ten thousand dollars on the completion of the road.   It is
thus seen that the law applies and operates exclusively in
that limited portion of the state known as Tillamook county.
It does not apply to all highways in that county, but only
to the particular highway designated in the law.   It con-
fers on that county special benefits at the expense of the
general public not conferred upon the other counties of the
state.   The act is plainly intended for a particular case, and
for a particular county, and contemplates no broader appli-
cation in the future.   When the road is built as provided,
and paid for out of the appropriation, the mission of the
act is ended.   It arbitrarily distinguishes between the differ-
ent counties of the state in its operation by building for that
county alone a highway at the public expense for its special
benefit, save the expense of salary and damages of locating,
when all other counties must lay out and construct their
roads at their own expense, under the operation of a general
law enacted for that purpose.

Nor does the road connect two great or remote sections of

the state in which the community at large have an interest, but its advantages and benefits are confined almost exclusively to the inhabitants living along its route.   The act is addressed to that county alone, personally as a legal entity, and designed to aid it exclusively, and operates only within its boundaries.   If a local act is one operating within a limited territory, or specified locality,—"one operating upon persons or property in a single county or two or three counties, would be local,"—the act in question must be obnoxious to that objection.   In *Kerrigan* v. *Force*, 68 N. Y. 381, an act entitled "An act relating to the expenses of judicial sales in the county of Kings," was held to be a local law within the meaning of the constitutional provision that no private or local bill should contain more than one subject, which should be expressed in its title.   CHURCH, C. J., says: "I entertain no doubt that this is a local act within the meaning of the constitution.   It applies to an officer of a single county, and to the property and sales made therein. It is not general, and does not apply to the people of the whole state.   True, all persons wherever living, in or out of the state, foreclosing mortgages in the county would be bound by the act, and they would be so bound because they would then come within the operation of this local act." In *Montgomery* v. *Com.* 91 Pa. St. 125, the case shows that an act was passed to reimburse certain parties for money advanced, and required the school directors of Ayr township to assess and levy a tax, etc., for that purpose, and the question was whether this act was in conflict with the provisions of the constitution of that state declaring that "the general assembly shall not pass any local or special laws regulating the affairs of counties, cities, townships, wards, boroughs, or school districts," etc., and the court held that the act was a local and special law, saying:   "The act in question is clearly local.   It applies to the township of Ayr only.   It is also special.   The tax was to be levied and collected for one specific purpose.   That purpose was to pay a certain sum of money to the persons named in the

act. The money could not be used for any other or different purpose."

If the true criterion by which to determine whether an act is local or general is to inquire whether under it the people of the state may be affected by its operation, the answer to that question as regards the present act must be that it is local and not general. It operates in the county of Tillamook only, and has no force or effect in any other portion of the state. If such a law is not local, it is difficult to understand in the light of the authorities what species of legislation would constitute a local law. It is also special, because it is limited to a particular county for a special purpose. This is as much an individual case as a special law, applicable only to a particular individual. It can have no application to any other county or road than that named, and the appropriation could not be used for any other or different purpose. An act may be special where it applies to many particular and existing persons or things, as where it applies to only one; but the strength of our case lies in the fact that it applies to only one. It is special to Tillamook county and to no other.

General laws relate to the public at large, but special acts concern the particular interest or benefit of certain individuals or particular classes of men. We are relieved of the difficulty which often arises in distinguishing whether an act is general or special when it concerns many particular persons or things, for the act here concerns the interests of one county only, and that designated by name. In *Devine* v. *Com.* 84 Ill. 590, an act was passed under which it was proposed to issue bonds for the erection of a court house, etc., but which by its terms limited its operation to counties containing over one hundred thousand inhabitants, etc., and the question was, whether the act was in conflict with that provision of the constitution of that state, which provides that the general assembly shall not pass local or special laws in certain enumerated cases, and among the subjects mentioned is a subdivision "for regulating county and town-

ship affairs," but the court held that a statute which by its terms can have application to but one county in the state, although purporting to be a general law applicable to all counties having a certain population, is special legislation and within the prohibition of the constitution on that subject. The court says: "Its very terms preclude it from having any application to any county except Cook county, for we take judicial notice that no other county in the state contains over one hundred thousand inhabitants. That it is a local or special law applicable only to Cook county, is a proposition so plain it will bear no discussion, and unless its passage can be justified for some reason it is invalid. In *City of Topeka* v. *Gillett*, 32 Kan. 437, an act was passed which was claimed to be in conflict with that provision of the constitution of Kansas, which provides that "the legislature shall pass no special act conferring corporate powers," and the court says: "The act would apply to just those three cities,—Topeka, Lawrence and Atchison,— no more and no less. Is such an act a general act, or is it merely a special act? It is our opinion that it is merely a special act. It is true, it applies to three cities, and not merely one, but the act declared unconstitutional in the case of the *City of Council Grove*, 20 Kan. 619, applied to four cities, and not merely one; and the act declared unconstitutional in the case of the *State ex rel.* v. *Hammer*, 42 N. J. L. 435, applied to two cities, and not merely to one; and the act declared unconstitutional in the case of the *State* v. *Lawrence Bridge Co.* 22 Kan. 438, applied to several different corporations, and not merely to one; and the act declared unconstitutional in the case of the *State ex rel.* v. *Herrmann*, 75 Mo. 340, applied to a large number of notaries public, and not merely to one."

But our act applies merely to one — it is designed to aid Tillamook county and no other; it specifically names that county as its beneficiary, and contemplates no broader or other application of its benefits. Within the definition that all special laws are made for individual cases,— that they

relate to divers particular towns, or to one or more particular counties,—this act was made to aid that particular county to build that particular road.  It applies specifically to it, and operates only within its boundaries.  Such a law is in no sense general, but wholly special, within the meaning of all the authorities.  It seems to us that it would be difficult to imagine a clearer case of special legislation.  With these considerations in view, it becomes necessary now to notice *Allen* v. *Hirsh*, 8 Or. 412, mainly relied upon by the plaintiff. The act passed upon in that case was an act for the construction of a wagon road up the south bank of the Columbia river from near the mouth of the Sandy in Multnomah county to The Dalles in Wasco county, and was to be paid for, not from taxes levied upon the people of the state, but from the proceeds of sales of public lands for the purpose of making internal improvements.  That act was treated as providing for an internal improvement,—a state highway,— in which the community at large was interested.  The benefits of the road to the people along its route were regarded as insignificant compared with the great advantages to the people at large, which it was its purpose to subserve.  Referring to its character, its necessity and its advantages to the people at large, KELLY, C. J., said: "It is well known to all. that during the winter months it is the only practicable route for a public road through the mountain range which separates Eastern from Western Oregon, and it was deemed to be of the most importance to the people of the state that trade and travel and mail facilities should not be obstructed; that intercourse between these two great divisions of the state should not be suspended during that season of the year, when navigation on the Columbia is closed by ice in the river.  It was well known to the legislative assembly that for weeks at a time all communication between the east and west was suspended until the interruption came to be regarded as almost a public calamity, and it was to prevent these obstructions that the appropriations of money were made to construct The Dalles and Sandy road."  It is thus

seen that the road was regarded by the court as a great highway connecting two important divisions of the state, separated by a high range of mountains, through which travel and traffic might pass at all seasons of the year, and in which the people of the whole state were interested in like manner as they would be in the construction of a portage road to connect the navigable waters of the Columbia at the place of its obstruction. It was in this view that the court thought that the act could not be regarded as local or special; for the sphere of its influence or operation was not confined to a specified locality, but applied to the people of both sections of the state, and was, therefore, a matter of general concern. This is the ground upon which that case was decided. But while it was insisted by opposing counsel that this difference was sufficient to exclude the present case from the effect of that decision, yet his argument amounted to saying that the law was stated correctly by the court, but wrongly applied in that case.

The purpose of the constitutional restriction upon the legislative power in the cases enumerated was obviously to require that these specified subjects should be regulated by general laws of uniform operation throughout the state. In the execution of this purpose it was intended by the restriction to prevent unjust distinctions arising from the operation of local laws between different localities, and to prevent like distinctions from the application of special laws to particular individuals, counties or things. This act violates that principle of this constitutional restriction, and embodies the mischief it was intended to prevent, and cannot be upheld. This is the ground upon which we declare this act to be unconstitutional. While it is true that every court approaches with gravity the question of declaring a law to be unconstitutional, and never exerts its power so to do while doubt exists, yet considerations of gravity stand for naught when its incompatibility with the constitution is shown, and nothing remains for the court but to discharge its duty by declaring the law to be unconstitutional. It may be that in

this county, as some other localities of the state, where the population is sparse and the funds of the county are limited, that such roads, built at the public expense, would be of general service to the people of those localities, and lend to the development of their interests and prosperity. If this is so, and a change is desirable, the remedy lies with the people, and not with the court.

There was no error, and the judgment of dismissal must be affirmed.